## SEIDENSTICKER, ESTATE OF, IN RE.
## DEPARTMENT OF TAXATION, Appellant v. SEIDENSTICKER, et, Exrs., Appellees.

Ohio Appeals, Second District, Franklin County.

No. 3732. Decided June 22, 1944.

Thomas J. Herbert, Atty. Gen., Aubrey A. Wendt, Asst. Atty. Gen., Columbus, for appellant.

Allen I. Pretzman, Columbus, for appellees.

## OPINION

By GEIGER, J.

This matter is before this Court on an appeal on questions of law from a judgment of the Probate Court of Franklin County, involving the question as to whether or not certain transfers of chattel property and real estate made by John W. Seidensticker were subject to inheritance tax.

The statutes applicable to the question may be found in §5331 GC et seq.

Section 5331 GC is largely a definition statute. The statute and certain paragraphs thereof will be hereafter referred to.

**Section 5332 GC** provides that a tax is levied upon the succession of any property passing, in trust or otherwise, to or for the use of a person, etc., in the following cases:

The third paragraph relating to properties subject to inheritance tax provides that property shall be liable for such when the succession is to property by deed * * gift, made without a valuable consideration substantially equivalent in money or money's worth to the full value of such property, (a) in contemplation of the death of the grantor, vendor, assignor or donor; or (b) intended to take effect in possession or enjoyment at and after such death.

**Section 5332-2 GC** provides that any transfer * * if shown to have been made without a valuable consideration substantially equivalent in money or money's worth to the full value of such property, if so. made within two years prior to the death of the transferor shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

**Paragraph 5** of §5331 GC provides:

" 'Contemplation of death' means that expectation of death which actuates the mind of a person on the execution of his will."

The Probate Court of Franklin County in determination of the inheritance tax by entry of December 16, 1943, found that the gross value of the estate is $284,728.28. Due to the fact that there was a mistake in the estimated value of certain property the Court, on December 28, 1943, made a second entry to the effect that the gross value of said estate is $279,-728.00. Each of these orders provides for the amount of tax to be paid by the persons severally interested in such estate. In the entry of December 16, 1943, the total of such tax was found to be $1255.04 and under the entry of December 28, 1943, the total was found to be $1094.77, about $160.00 less than by the first entry.

THE FACTS.

On the ——day of November, 1943, an application and itemized statement of the assets and liabilities necessary for the determination of the inheritance tax was filed in the Probate Court of Franklin County in connection with the estate of the decedent.

On November 16, 1943, an order to appraise was issued to the auditor of Franklin County and on December 16th the appraisal was filed and an order was entered by the Court deter-

mining the value of the property and the amount of taxes to which the several successions were liable as set out in the entry of December 16, 1943. On December 28th the Court made an entry to the effect that the determination of December 16th be set aside and the Court redetermine the value of the estate as provided for in §5345 GC. As above stated, the second determination and entry were made to correct the error that was apparent in the first statement as to the appraised value of the property.

On January 4, 1944, exceptions to the determination of the tax as made on December 28th were filed by the executors. At the inception of this hearing objection was made by the Department of Taxation to the jurisdiction of the Court, which objection was overruled and the exceptions were sustained on March 15, 1944. A motion for new trial was overruled, and appeal taken.

The record shows, and the same is not disputed, that the decedent made certain gifts to his wife, Elizabeth, on the following dates and of the value ascertained by appraisal:

December 14, 1931, 100 shares Market Exchange Bank
     Company stock _____$ 1,500.00
May 6, 1932, Residence at 201 S. Dawson Ave., Bexley 13,560.00
Feb. 4, 1933. 108 shs. Lamb Glass Co. _____ 51,840.00
June 30, 1936, 90 shs. Banner Die, Tool & Stamping
     Company _____ 25,200.00
Feb., 1942, Five U. S. Treasury notes in amount of
     $500.00 each _____ 2,500.00

                                                 $94,600.00

The Probate Court held in the last entry that none of the above enumerated property was subject to inheritance tax and this ruling of the Court is the basis for the appeal.

After the making of the gifts above enumerated the decedent had left at the time of death a net estate amounting to $144,390.45 which was subject to inheritance tax.

At the outset we are met with objections to the jurisdiction of the Court to make the final order, which may be understood by a consideration of the assignment of errors filed by the appellant, the Department of Taxation. Those assignments relating to the jurisdiction are first enumerated:

(1) The Probate Court erred in holding that it had power on motion to set aside its order and determination of

inheritance taxes of December 16, 1943, and redetermine the tax as shown by the entry of December 28, 1943.

(2) The Probate Court erred in considering exceptions filed to its erroneous entry of December 28, 1943.

The other assignments referred to the finding · of the Court to the effect that the property was not subject to inheritance tax. These assignments are covered by four additional assignments:

(3) That the Probate Court erred in holding that the gifts and each of the gifts made by the decedent to his wife on December 14, 1931, May 6, 1932, February 4, 1933, June 30, 1936, February, 1942, were not made in contemplation of death within the meaning of §5331 et seq GC.

(4) The Court erred in holding that the gift of the homestead made by the decedent to his wife on May 6, 1932, was not a gift made in contemplation of death or that it was not a gift intended to take effect in possession or enjoyment at or after death, or both, within the meaning of §5332 ¶3 GC.

(5), (6), and (7) That the decision of the Court was contrary to law and against the evidence and contrary to the same.

It appears from the evidence and stipulations that the decedent died on July 29, 1943, leaving a large estate. The Probate Court in determining the inheritance tax included by the entry of December 16, 1943, the gifts of $94,600.00 in addition to the net estate of $144,390.45. The conveyances enumerated made during the lifetime of the decedent were included on the ground that they were made in contemplation of death. The executors filed exceptions at which hearing the evidence on behalf of the Commission and of the exceptors was heard and considered by the Court. And thereupon the Court handed down its last decision finding that none of the transfers during the lifetime of the decedent was made in contemplation of death or was designed to take effect at or after the death of the decedent.

All of the transfers, with the exception of the last one, made in February, 1942, were accomplished many years prior to the decedent's death.

At the time of the decedent's death he was sixty-three years of age, and the first of the gifts enumerated in the asignments of error was made twelve years prior to his death; the second, eleven years; the third, ten years; the fourth, seven years; and the last as above stated, a year and a half.

The facts disclosed by the evidence in this case were that the decedent had long been engaged in the banking business in

the city of Columbus, and had amassed a considerable estate. He was engaged in a number of transactions not directly connected with the banking business. His health was vigorous, he being devoted to athletic sports, but as he grew older, confined his exercise to horseback riding and boating. Five or six years prior to his death he purchased a farm and made extensive improvements thereon. Two years prior to his death he suffered a paralytic stroke from which he made a gradual recovery, resuming his work at the bank. For several years prior to his death he was interested in remodeling the banking room, and the advancement of the salaries of the employees. His son being a contractor, he constantly importuned him to supply material for additions to his farm, constantly showing a deep interest in the conduct not only of his banking business, but in those incidental matters to which he had given some of his time.

A very important incident occurred about twelve years prior to death which must be considered in relation to determining whether his gifts to his wife were in contemplation of death or for other purposes.

He was an individual trustee of the Knights of Columbus Home Association to which The Penn Mutual Life Insurance Company loaned $300,000.00 on its building. The note and mortgage had been in default and according to the testimony of a co-trustee the Penn Mutual as far back as 1931, or at least more than a year prior to the commencement of the suit had been threatening a suit on the note against not only the Knights of Columbus Association, but all the individual trustees of whom the decedent was one. This threat of a suit or the suit itself continued from 1931 until 1939. A judgment was asked by the Penn Mutual for $294,000.00 with interest at 8 per cent. Only four of the trustees were responsible financially, among them, the decedent. The decedent was much worried over the possibility of a deficiency judgment against him and discussed the situation with intimate friends, his lawyers and his co-trustees.

In 1936 he executed a will which was probated and the general provisions of which were to give his entire estate to his two sons in trust, with unrestricted authority to invest and pay a certain amount to his wife out of the income and if necessary, to increase the payment to $3000.00 per year during her lifetime. The trust made provisions for his children. This is sufficient to present the question of whether the gift to his wife

was in contemplation of death, and we will comment on it further.

It is necessary for us at the threshhold to consider assignments of errors Nos. 1 and 2. The appellant claims in its brief that the Probate Court had no power to vacate its determination of the inheritance tax of December 16, 1943, and enter a subsequent determination on December 28, 1943. Appellees assert that the appellant not having raised in that Court the question of the jurisdiction of the Probate Court to modify its former order of December 16th, which held that the property was subject to taxation, cannot now present this matter before this Court as a prejudicial error. We prefer not to pass upon this question at present.

To the Probate Court are given statutory rights to determine inheritance taxes. The claim is made by the appellant that this power in this Court is merely administrative and that when the Court has determined the amount of taxes it has exhausted its power and has no right to reconsider its finding upon exceptions of those interested in the estate. The claim is to the effect that under §5339 GC certain powers are given to the Probate Court to reconsider its finding to cover matters not theretofore considered by the Court, and that the question which the Probate Court determined upon the exceptions was not such as were enumerated in §5339 GC and that therefore the Court overstepped its power in modifying its judgment of December 16th, or in assuming further jurisdiction.

The appellant asserts that under the provision of §5345-4 GC the Court has a right to determine the inheritance tax and has jurisdiction in certain administrative procedure, but that under §5345 GC, the Court is required to forthwith find the market value of the securities, the amount of taxes and the fiduciaries liable therefor. It is asserted that prior to the filing of exceptions the acts of the county auditor and the Probate Court are distinctively administrative and they having performed such acts the respective officials have exhausted their power unless provisions may be found for the modification or correction other than by exception.

It is asserted that having certain express powers it must be assumed that the Probate Court in its administrative capacity has such powers only and such incidental powers as are necessary to permit it to carry out its express powers, and that the entry of December 16, 1943, could be corrected only under express statutory authority which is claimed to be lacking, and it is asserted therefore that the entry of December 28, 1943, and

the exceptions to the latter entry must be regarded as surplusage and unathorized and the entry of December 16, which holds that the gifts are subject to taxation, is still in force.

The appellees assert that under §10503-17 GC, the Probate Court has the same power as the Common Pleas Court to vacate or modify its orders or judgments and that for that purpose three terms of the Probate Court of four months each are provided. It is asserted by appellees that according to the plain provisions of the above statute the order of the Probate Court vacating the order of December 18th, being within the September term, brings the case squarely within the rule that a Court has entire control over its own orders during terms.

As we look at it, the determination of inheritance tax is initially confided in the Probate Court, and any procedure taken before that Court affecting such tax calls not alone for administrative action of the Court, but judicial action, and that the Court has the same power in reference to the orders made in connection with inheritance tax that it has in reference to any other matter rightfully lodged in that Court. It seems to us that it would be unjust to say that the Probate Court, in pursuance of administrative authority could levy a tax, often of great burden upon a decedent's estate, and that the same could not be reviewed in the ordinary course so as to permit the executors and legatees to show that the Court erred in imposing upon them burdensome taxes. We are unable to follow the argument of counsel for appellant on this matter, and overrule assignments of error Nos. 1 and 2.

### THE LAW AS APPLIED TO THE FACTS.

While we have examined many cases, we find the most controlling in the case at bar to be Tax Commission v Parker, 117 Oh St 215. It is there held that the provision of §5332-2 GC, touching transfers made within two years prior to the death of the testator shall be determined to have been made in contemplation of death, casts upon the transferee the burden of showing that a transfer of property made within two years of the death of the transferor, was made in contemplation of death.

"(4) The controlling fact in determining whether a transferor made the transfer of property in contemplation of death is whether the purpose of the transferor was to distribute or partially distribute his estate or was simply to do an act of generosity or kindness."

Judge Barnes of this Court in **In re Brenholts, 66 Oh Ap 539,** rendered an opinion touching a trust fund created five years before the settlor's death and not in contemplation of death, and held that it is not a part of his estate for the purpose of succession and that there is no presumption that the trust was made in contemplation of death when more than two years elapsed between its creation and the settlor's death, and in such case the burden is upon the taxing authorities to establish by a preponderance of the evidence that the transfer of property was made in contemplation of death.

Judge Barnes says on page 543 in substance, that the property transferred was a gift and the evidence supports the conclusion that the donors so considered it. Had the donors died within two years following the execution of the trust instruments, a presumption would have arisen that such gifts were made in contemplation of death, and the burden would have rested upon the donees to establish by a preponderance of the evidence that the gifts were not so made. Citing **Commission v. Parker, 117 Oh St 215.** Judge Barnes then states:

"It is inferable from the language of the syllabus and the opinion in the above-cited case that where two years or more have elapsed, the burden is then upon the taxing authorities to establish by a preponderance of the evidence that the transfer of property was made in contemplation of death.

"This court directly so held in the case of **In re Frantz, 62 Oh Ap 271.**"

The Judge on the same proposition refers to **In re Bender 60 Oh Ap 107.** We adhere to our former position in the case cited and now hold that as to all transactions taking place more than two years prior to the death of the decedent the burden is upon the Tax Commission to show that the same were made in contemplation of death and that there is no presumption that makes such transfer within the inhibited provisions of the statute. The Legislature of Ohio as a final paragraph of §5331 GC declared " 'Contemplation of death' means that expectation of death which actuates the mind of a person on the execution of his will". We are not of the opinion that this legislative declaration affords any great help to those who must determine whether or not a gift is made in contemplation of death. This matter is discussed somewhat at length in **Tax Commission v. Parker, supra,** where the Court concludes as above quoted.

170

One who has had experience in the trial of will cases, as well as in determining whether an act is done in contemplation of death, can see no guiding light from the legislative definition of "contemplation of death". We might illustrate briefly what difficulty such a provision might lead to. Let us assume that two young persons are recently married and that the man desires to protect his wife and makes a will in her favor and that at a later date he desires to transfer property to her as a gift pure and simple. What actuated his mind upon the execution of his will has no remote connection with what may have actuated his mind when he made a transfer of other property to his wife. It is frequently difficult to ascertain what the intent of a testator was in making a certain provision of a will, and the Legislature apparently has simply required that those difficulties incident to a will shall be transferred into an inheritance tax case where there is no possible connection between the two except a legislative notion that it would make the action of the donor more understandable when you consider what that same donor did or might have done in making a will. Instead of giving any illumination to the question the provision is simply one adding additional difficulties. This, we think, is recognized by Judge Barnes in the opinion heretofore cited.

THE FACTS IN THIS CASE

Having cleared away the preliminary matters, we consider the transfer of this property by the decedent of his wife some ten or twelve years before his death while he was in good health and enjoying the prospect of a number of years of happy and prosperous living. At that time he was confronted with the possibility of being held on a default judgment for a very large amount by virtue of the large loan made by the Penn Mutual to the Knights of Columbus, of which organization he was a trustee. As he expressed it to his friends, he did not propose that the Penn Mutual should destroy his savings and he thereupon, at various times, gave certain liquid assets to his wife, as a gift, with no reservation that it was in contemplation of death or was to be held by her for his own benefit during his lifetime.

A convincing circumstance in reference to his transaction was that while in good health, ten or twelve years before he died, he made these transfers to his wife with the express statement to his friends that he intended to protect his estate. Eight or ten years later he had a paralytic stroke and could then contemplate a possible near approach of death.

For two years he was in this condition but slightly recovered before he finally died. During this period with death approaching, he made no further transfers to his wife, but retained his property in his own name knowing that if he died possessed of the same his wife would be subject to inheritance tax. If there was any time when he might transfer property in contemplation of death, it certainly was after he had had a stroke two years before his death. No person can justly take the position that when he was confronted with the deficiency judgment while in robust health, he transferred his property to his wife in contemplation of death for the purpose of avoiding an inheritance tax, and did nothing after he was really within the shadow of death, to accomplish this purpose. It may be that the testator was not justified in endeavoring to cover up his property by transfer of the same to his wife, but he was not doing it in contemplation of death, but in contemplation of continued life to be enjoyed by himself and his wife.

One of the properties conveyed to his wife was a very desirable homestead. The wife took the title to it and he proceeded to live with her in the house without paying to her anything more than the ordinary contributions for household expenses. The argument is advanced that as to this real estate the husband was providing for his own welfare during his lifetime and that the wife took the property as a trustee for the husband. There is nothing to sustain any such argument. The wife took the property because the husband wanted her to take it, and they then lived there with their children as a family. He never requested that she retransfer it to him or do anything to secure to him any income from that property during his lifetime. It is quite apparent that the parties lived in harmony and that he was devoted to his wife and he had a perfect right to rely on her not turning him out of a residential property which he generously gave to her or gave to her to protect herself and family against the deficiency judgment which he feared.

There is one transfer to the wife made within the two year period prior to his death and such transfer clearly comes within the provision of §5332-2 GC, which provides that such a transfer shall be considered as being in contemplation of death, "unless shown to be to the contrary". What were the facts in relation to this transfer of $2500.00 of government bonds? Like a good citizen he contributed to the call of his government to buy government bonds, and like a wise man he used the investment in government bonds to protect himself

against inevitable taxes. In other words, he invested required tax money in an income producing asset which not only protected him, but gave to his government the money that it was asking for. Having invested $5000.00 he gave half of it to his wife to be held for the same purpose for which he was holding his own half, to wit, to take care of the expense of taxes on the real estate and other property which he had given to her. In these days a gift might turn out to be a burden rather than a favor if in connection with the gift the taxes mount to a point where a donee would be better off without the property than with it. Like a kind husband, well disposed to his wife, he said to her, "You will have to pay some taxes and we will share this $5000.00 equally as our contribution to the government expenses and in mutual protection for ourselves, our property and our children."

In addition to the cases already cited, we have studied the following:

**Sherman v Tax Commission of Ohio, 125 Oh St 367.**

In re Donnell, 28 N.P. N. S., 211.

**In re Estate Hamilton, 21 OO 86;** (opinion by McClelland, Probate Judge of Franklin Co., Ohio, a very excellent opinion.)

**Commission of Ohio v Seltzer, 41 Oh Ap 250.**

**In the matter of the Estate of Bender, 60 Oh Ap 107.**

**In re Perkins Estate, 27 O. L. A. 525.**

**In re Estate of Frantz, 62 Oh Ap 272,** (opinion by Barnes J.)

The Court below rendered a very logical opinion, with which we are in entire harmony.

The judgment of the Court below affirmed. All assignments of error overruled.

BARNES, P J, and HORNBECK, J, concur.